

# OFFICE OF
# THE ATTORNEY GENERAL
## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

April 16, 1947

Overruled by *WWW-131 when conflicts*

Hon. Henry G. Lehman, Chairman
Insurance Committee
House of Representatives
Austin, Texas

Opinion No. V-147

Re: Constitutionality of H.B. 665 and 666 relative to group insurance on the lives of employees of
Dear Sir: state and district schools.

　　　　We refer to your inquiry concerning the constitutionality of House Bills Nos. 665 and 666, 50th Legislature, now pending in the Insurance Committee of the House of Representatives.

　　　　Both bills are for the purpose of adding provisions to existing law authorizing school systems, as employers, to pay all, or a portion, of the premiums on group insurance policies for the benefit of employees of such schools, with money belonging to such employer district; or, alternatively, such employers are given the power to make salary deductions from pay warrants of such employees for such premiums.

　　　　House Bill No. 665 includes "The State of Texas and any of its designated agents or agencies, with responsibility or authority for public education, such as common and independent school boards, Boards of Regents of State colleges and universities, the county school boards, or any other agency of and within the State by which a person may be employed in public education, hereinafter referred to as public school employees", and also includes insurance for health, accident, accidental death, dismemberment and hospital, surgical and medical expenses for the benefit of employees.

　　　　No method is provided in either of these bills by which an administrative board may determine the percentage of the premium which may be paid in part by the school employers and in part by its employees, or how much of such premium shall be paid by the employees; nor

Hon. Henry G. Lehman, Page 2, V-147

is there any provision requiring the consent of the employees of school employers to deductions from their salaries to pay premiums on insurance policies. House Bill No. 666 merely provides that the amount of insurance shall be "based upon some plan which will preclude individual selection." That language is taken from the law which the bill seeks to amend, but it creates confusion in an effort to construe the law which the bill re-enacts.

We are attaching copies of our Opinions Nos. 0-2469, 0-2838 and 0-3541, which are pertinent to your inquiry.

In Opinion No. 0-2469, Honorable T. O. Walton, President of A & M College, was advised that premiums on group insurance policies may not be lawfully paid with money derived from student fees, local funds or other institutional funds under the jurisdiction of the Board of Directors of that college.

Opinion No. 0-2838 advised Honorable T. M. Trimble, First Assistant State Superintendent of Public Instruction, that the Board of Trustees of the Fort Worth Independent School District may not lawfully use local maintenance funds to pay the employer's part of a group life insurance premium for teachers; and also that such school trustees may not lawfully include such premiums in teacher's contracts as part of such teachers' salaries because such added sums to pay such premiums would not thereby become a part of such salary in fact and would remain public money.

In Opinion No. 0-3541, this department defined "Available School Funds" and advised Honorable Lon E. Alsup, Chairman, House Conference Committee, that administrative costs of divisions of the State Department of Education cannot be paid from the State Available School Fund.

We adhere to those opinions.

Both of the bills under consideration contemplate the use of public monies to pay premiums on group insurance policies for the benefit of employees of school employers. Such money is to be paid by the school employer directly or is to be withheld as salary deductions, with or without the consent of such school employees.

Sections 51, 52 and 53 of Article III of the Constitution stand as obstacles to the grant of public money to school employees for such purposes.

The pertinent part of Section 51 reads:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individuals, association of individuals, municipal or other corporations whatsoever, . . . "

The pertinent part of Section 52 reads:

"The Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of this State to lend its credit or to grant public money or a thing of value in aid of, or to any individual, association or corporation whatsoever.. . . . "

School employees are "individuals" and groups of them are "associations of individuals".

The pertinent part of Section 53 reads:

" . . . nor pay, nor authorize the payment of, any claim created against any county or municipality of the State under any agreement or contract, made without authority of law."

In the case of Harlingen Independent School District vs. C. H. Page & Bro., 48 S. W. 2d 983, Section A of the Commission of Appeals of the State of Texas, decided that an independent school district is a "municipality" within the constitutional provision precluding the Legislature from paying or authorizing "municipalities" to pay claims created against "municipalities" under a contract made without authority of law.

Section 5 of Article VII of the Constitution provides that:

" . . . the available school fund shall be applied annually to the support of the

public free schools. And no law shall ever
be enacted appropriating any part of the
permanent or available school fund to any
other purpose whatsoever. . . "

Article 2837, Vernon's Civil Statutes, reg-
ulates the use of school funds as follows:

"1. The State and county available
funds shall be used exclusively for the pay-
ment of teachers' and superintendents' sal-
aries, fees for taking the school census,
and interest on money borrowed on short time
to pay salaries of teachers and superinten-
dents, when these salaries become due be-
fore the funds for the current year become
available . . .

"2. Local funds from district taxes,
tuition fees of pupils not entitled to free
tuition and other local sources may be used
for purposes enumerated for State and county
funds and for purchasing appliances and sup-
plies, for the purpose of payment of insur-
ance premiums, janitors and other employees,
for buying school sites, for buying buildings
and repairing and renting school houses, and
for other purposes necessary in the conduct
of public schools to be determined by the
Board of school trustees . . . "

The insurance premiums mentioned in that law,
are for insurance for the protection of school property
against damage.

We are further of the opinion that deductions
may not be made from compensation warrants of employees
for the payment of insurance premiums, without the con-
sent of such employees, because such deductions would
deprive such employees of their property without due
process of law in violation of Section 19, Article I,
of the Constitution of the State of Texas, and the
Fifth and Fourteenth Amendments of the Constitution of
the United States.

## SUMMARY

House Bills 665 and 666, 50th Legislature, authorizing school officials to pay premiums on insurance policies with public money for the benefit of employees, are void because they would authorize the making of a grant of public money to individuals and associations of individuals in violation of Art. III, Sects. 51, 52, 53 of the Texas Constitution; and because they would authorize the use of public school funds for a purpose other than the support of the public free schools. Const. of Tex., Art. VII, Sects. 3, 5.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By

W. T. Williams
Assistant

APPROVED APR. 17, 1947

ATTORNEY GENERAL

WTW:rb:erc:dr:mrj